(C. D. 732)

AMERICAN BITUMULS CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 13, 1943)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise at issue here, consisting of certain crude oil imported in bulk, was assessed for duty under section 3422 of the Internal Revenue Code and T. D. 50040 at the rate of ¼ cent per gallon, upon the basis of the weigher's return of weight. The plaintiff claims that duty was taken upon too great a quantity because an allowance was not made for excessive moisture, etc., in accordance with section 507 of the Tariff Act of 1930, and articles 810 and 811 of the Customs Regulations of 1937.

At the trial the liquidator of the entries and the Government chemist testified for the plaintiff that the bottom sediment and moisture was $34/100$ of 1 per centum excessive in the merchandise covered by entry 1564 and $77/100$ of 1 per centum excessive as to that covered by entry 1677. The chemist reported such findings to the examiner. The liquidator, however, did not learn that the moisture was in excess of 1 per centum, and as it was not the practice no notice was mailed to the broker to that effect. However, the liquidator further testified that if the importer had filed an application for allowance within 10 days after the return of weight, an allowance in duties would have been made. As to the regulations relative to the application for allowance, the liquidator regarded the same as mandatory, although he had never personally observed that the regulations now in force had been changed to read "shall be filed."

Section 507 of the Tariff Act of 1930, provides as follows:

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

In pursuance to the authorization in section 507 the Secretary of the Treasury promulgated the regulation contained in the Customs Regulations of 1937, as follows:

Art. 811. Application—Procedure.—(a) Application for an allowance for excessive moisture or other impurities shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him. The collector shall stamp the application with the date of receipt in the customhouse.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and may, if necessary, refer the application to the appraiser for such determination.

(c) If the collector shall be satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry.

Counsel for the importer contends that article 811 of the Customs Regulations of 1937 is defective and unreasonable, inasmuch as no provision is made for notifying an importer of the date the collector receives the return of weight; that regulations which place an undue hardship upon an importer or which require immoderate time limitations do not have to be followed (citing *United States* v. *Champion Coated Paper Co.*, 22 C. C. P. A. 414, T. D. 47422, and *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122); and that the provisions of article 811 are directory rather than mandatory, because said article fails to require that a claim for excessive moisture "must" be filed within 10 days, the word used being "shall" which has been held to be merely directory (citing *United States* v. *Ingram*, 17 C. C. P. A. 228, T. D. 43668).

The Government contends that article 811 is typical of similar regulations promulgated by the Department since 1900, all of which imposed a time limit upon the right of an importer to make application for an allowance for excessive moisture and that the reasonableness and validity of such regulations have been sustained by the courts (citing *Pacific Coast Glass Co.* v. *United States*, Abstract 22732, and *Frame & Co.* v. *United States*, T. D. 40476) and that articles 1359 (a) and 1360 (a) of the Customs Regulations of 1937 provide that within 3 days after a ship's cargo has been weighed, the weigher's completed dock books become public records in the office of either the surveyor or the collector and that such public record is sufficient publication to afford constructive notice thereof to the importer. The Government further contends that the regulation, article 811, is mandatory and that either the word "must" or the word "shall" is an obligatory word, and that this court recognized the mandatory character of the regulations in the case of *Gerhard & Hey Co.* v. *United States*, Abstract 27804, in holding that compliance with such regulation was a condition precedent to an importer's right to obtain an allowance for

excessive moisture and failure of the importer to file an application for allowance within 10 days precluded any recovery of duties.

The only question before us here is whether or not the customs regulation, article 811, is mandatory or directory in nature. If mandatory, compliance therewith is a condition precedent to recovery; if directory, the importer may prove his claim before this court.

A review of the tariff provisions and of the decisions of the courts indicates that in cases arising before the enactment of the Tariff Act of 1922 the customs regulations relative to excessive moisture, etc., were merely directory. See *In re Mattewan Manufacturing Co.*, T. D. 22078, G. A. 4672; *In re Thomas Kenworthy's Sons*, T. D. 27220, G. A. 6319; and *In re Lawrence Johnson & Co.*, T. D. 37007, G. A. 8029, all holding that the regulations were directory rather than mandatory. The case of *Frame & Co.* v. *United States*, T. D. 40476, G. A. 8888, arose during the Tariff Act of 1922, at which time the regulations of 1915 were still in effect. Although such regulations had previously been held to be merely directory, the court there held the same to be mandatory in nature, stating:

It is very true, as insisted by importer's counsel, that if the collector makes a wrong decision on any case the board may correct him, but in a case where the regulations authorized by statutes, and having the same binding effect as the statutes, are not complied with, the board can not permit any substitution for the plan proposed for ascertaining the fact and affording relief to the person whose long delay rendered it impracticable to ascertain the truth of the case.

Section 2898 of the Revised Statutes made provision for the allowance of real tare, and stated that such tare "*may* be ascertained under such regulations as the Secretary of the Treasury *may* prescribe * * *." As heretofore stated, such regulations were held to be directory only. No provision was otherwise made in tariff acts prior to the Tariff Act of 1922. In the latter act appeared section 506, identical in wording with section 507, *supra.* The Customs Regulations of 1915, drawn in conformity with section 2898 of the Revised Statutes, were not mandatory, but after the passage of the Tariff Act of 1922 wherein Congress authorized the Secretary of the Treasury to prescribe and issue regulations establishing just and reasonable tares and specifically prohibited allowance for-draft or for impurities other than excessive moisture not usually found upon imported merchandise, such regulations may then be regarded as issued pursuant to the statute and mandatory, and have, as stated in the *Frame* case, "the same binding effect as the statutes."

In the case of *United States* v. *Ingram & Co.*, *supra*, relied upon by the plaintiff, involving a 4 per centum absorption of sea moisture, this court sustained the importer's claim upon authority of cases arising before the enactment of the Tariff Act of 1922. Upon appeal, our appellate court stated that the only matter for determination was

whether Regulation 732 of the Customs Regulations of 1923 was mandatory or directory. The regulation there required that an application *must* be filed within 10 days after the return of weight, and the court in commenting upon the *Lawrence Johnson* case, *supra*, cited as authority by the lower court, stated that the regulation there in question used the word "shall" and that it did not appear to have been used in a mandatory sense, while the regulation before it required that the application *must* be filed. However, the appellate court approved the reasoning of this court in the *Frame* case and stated that it presented a sounder view than the case cited as authority by the lower court.

In the *Pacific Coast Glass Co.* case, *supra*, relied upon by the Government, the regulation involved was also article 732 of the Customs Regulations of 1923, requiring that an application *must* be filed, and it was held that such regulation was valid and reasonable and that timely compliance therewith was a condition precedent to the right of recovery for excessive moisture.

Whether the regulation before us uses the word "must" or "shall" is, in our opinion, of little importance. Both words are interchangeable. In the second or third person the word "shall" implies "authority or control" and is used to express a "command." The word "must" is defined: "To be obliged; be necessarily compelled; be bound or required by physical or moral necessity, or by express command or prohibition, or by the imperative requirements of safety or interest; be necessary or inevitable as a condition or conclusion:   *   *   *" See Century Dictionary & Cyclopedia, pages 3911 and 5546. See also *Escoe* v. *Zerbst*, 295 U. S. 490.

Inasmuch as the regulations require dock books showing the completed returns of weight to become public records within 3 days after a ship's cargo has been weighed, it is clear that an undue hardship or unreasonable time limitation is not placed upon the importer. The cases cited by the plaintiff in this respect are not in point. The regulations there required of the importer conditions impossible to perform or such as would require the importer to surrender his legal rights, while here all that is required is diligence upon the part of the importer. The *Conkey* case, *supra*, involved a Treasury regulation that was held unreasonable inasmuch as it made the affidavit of the master builder, general storekeeper, etc., over whom the importers had no control, exclusive evidence of the fact that the importation there in question was actually used in the construction or repair of American-built vessels. The *Champion Coated Paper Co.* case, *supra*, involved a regulation which required that in order to obtain a drawback the claim therefor must be completed within 2 years from the date of exportation. The court found that an allowable claim could not be filed within that time because

of pending protest proceedings, and held that Congress did not intend anyone entitled to protest or appeal to reappraisement should waive any rights he might have in the prosecution of such proceedings in order that he might secure a certificate of importation as required by the regulation as essential to the completion of the drawback claim.

For the reasons stated, we hold that compliance with article 811 of the Customs Regulations of 1937 is mandatory and that the regulation is reasonable and valid and has the same binding effect as the statute itself. Judgment will therefore be entered in favor of the Government.