Aaron H. COLEMAN et al., Plaintiffs,

v.

William H. BRUCKER, Defendant.

Civ. A. Nos. 3822–56—3828–56.

United States District Court
District of Columbia.

Nov. 13, 1957.

Abe Krash, Washington, D. C., for plaintiffs.

Donald B. MacGuineas, Dept. of Justice, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

The Court has before it six actions, similar in their nature, brought by former employees of the Department of the Army who had been removed from their positions as security risks pursuant to the provisions of the Act of August 26, 1950, Title 5, United States Code Annotated, § 22–1 et seq., which instituted a so-called security program for Government employment.

This statute was before the Supreme Court in the case of Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396, which construed the Act of Congress as being limited to those employees who are occupying so-called sensitive positions, that is, positions that might have an effect on the interests of national security. The decision in Cole v. Young, does not affect the plaintiffs at bar, since the various plaintiffs were removed from the positions which were sensitive. The cases are before the Court at this time on cross-motions for summary judgment.

██ It is fundamental that there is no vested constitutional right in Government employment, and that the Federal Government has plenary power to hire and discharge its employees. In fact, history tells us that prior to the enactment of the Civil Service Act it was quite customary to discharge Government employees on a large scale on a change of administration, and that many employees were severed from their positions merely because they belonged to a polit-ical party other than that of which the head of the agency was a member. No one ever thought that actions of this kind, arbitrary though they may seem, and that had no bearing upon the efficiency of the employee, were repugnant to the Constitution.

These principles were upheld by the Court of Appeals for this Circuit in Bailey v. Richardson, 86 U.S.App.D.C. 248, 259–260, 182 F.2d 46, 57. In the opinion in that case we find the following pointed summary of this doctrine:

"The Constitution makes the President responsible for the execution of the laws and makes the Congress responsible for the vesting of appointments in the executive branch. Those two authorities are, therefore, responsible for the ability, the integrity, and the loyalty of the personnel of the executive branch. That responsibility necessarily includes the power to choose employees for executive duty, and the power to remove those deemed not qualified is a correlative power. No function is more completely internal to a branch of government than the selection and retention or dismissal of its employees. So it has been held many times that the power of removal is an incident of the power of appointment."

This decision was affirmed by the Supreme Court, by a divided Court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352. Consequently, it is the law of this jurisdiction.

██ It has also been held that the President's power of removal may not be limited by Congress in respect to such officers of the Executive Branch of the Government as the President personally appoints.[1] Congress, however, has the right to place certain limitations on removals of Government employees by heads of Government agencies. Consequently, there is no constitutional question involved here. If the Government constitutionally may discharge an em-

---

1. Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160.

ployee at will, or even whim, as used to be done frequently in years past, it has the right to do so by a procedure that does not meet the requirements of constitutional due process. In other words, procedural due process, in the opinion of this Court, obviously is inapplicable to removals of employees from the Government service.

This brings us to a consideration of the question whether any statutory limitations or any restrictions in any regulations have been violated in removing these plaintiffs. The statute to which reference has been made at the beginning of this discussion authorizes heads of certain agencies, among which are the Secretary of Defense, the Secretary of the Army, and the Secretary of the Navy, to remove employees if the head of the agency determines that the interests of national security so requires. Such removals are permitted, in the language of the statute "in [the] absolute discretion" of the head of the agency.

 The statute, however, prescribes certain procedural requirements that have to be followed before a removal is effective. Necessarily a removal under the power conferred by this statute would be invalid if these procedural requirements were not followed. It is complained that there was failure to comply with these requirements in two respects. First, it is asserted that the statute requires a written statement of charges. This provision was, indeed, complied with. It is claimed, however, that there is implied in that requirement that the findings of the Hearing Board and the Review Board be made available to the employee. There is no such provision in the statute, and the Court is unable to conclude that it is implicit in the Act of Congress.

In this case a written statement of charges containing meticulous details was served on the employee, and then a notice of removal after a hearing was likewise served on him. This notice implied, of course, that he was found guilty of the charges. There is no requirement that the Departmental memoranda which led to the final decision be disclosed to the plaintiff.

 The next objection raised is that there was a failure to comply with the requirement of the statute that the employee be accorded a hearing. Actually it is not disputed that a hearing was accorded to the employee at which he was given full opportunity to answer the charges against him and to introduce evidence in his behalf. It is contended by the plaintiffs, however, that the term "hearing" implies the type of a hearing which is surrounded by the requirements of due process of law and other constitutional provisions, namely, confrontation with witnesses against him, and opportunity to cross-examine. It should be borne in mind that the privilege of confrontation of witnesses applies by the very express provisions of the Constitution only to trials of criminal cases. It has no application in proceedings of other types. Beyond this, however, a hearing provided by statute does not necessarily mean a full hearing of the type accorded by a court of law. It does not mean a trial. It may be a summary hearing. It merely means an opportunity to the plaintiff to answer charges and to give an explanation and to introduce evidence.

A somewhat similar question was raised under the probation statute in Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566. In that case, Mr. Justice Cardozo, writing for a unanimous bench, construed the probation statute as requiring a hearing before probation could be revoked. He held, however, that the hearing did not involve a trial in any strictly formal sense but merely an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion had not been abused by the failure of the inquisitor to carry the probe deeper.

The Court is of the opinion that the hearing of the type that was conducted here complies with the requirements of the statute that a hearing be accorded to the employee. Moreover, the Court is of the opinion that since, as stated, constitutional due process does not apply to

removal from Governmental employ, it would be illogical to import into the term "hearing", as used in this statute, its constitutional definition with the constitutional safeguards.

In view of this discussion the Court finds it unnecessary to pass upon the contention that plaintiffs are guilty of laches.

In the light of the considerations just summarized, the plaintiffs' motions for summary judgment will be denied, and defendant's motions granted.